OPINION OF THE COURT
John G. Connor, J.
Petitioners herein seek review under CPLR article 78 requesting respondent to grant an extension of a variance allowing double bunking. In May, 1982, the State Commission of Correction hereinafter referred to as SCOC, granted a variance to the Saratoga County Jail allowing double bunking to eight cells. A hearing was held on October 7, 1982 denying the extension.
On July 1, 1982 SCOC granted Saratoga County Jail a variance to 9 NYCRR 7040.4 (a), (b) which provides a minimum requirement of 75 square feet per prisoner. Petitioners had informed SCOC that the only time sentenced inmates would occupy the double bunk cells would be when sleeping from 10:00 p.m. to 6:30 a.m. A work assignment plan in conjunction with the county and towns would be instituted. The variance was granted for 90 days “on an experimental basis with the stipulation that the Commission’s Construction Unit and Regulatory Review Bureau give Commission members a report on the experimental project within that period” (emphasis added).
The question now before this court is whether the respondent SCOC acted arbitrarily and capriciously in denying petitioner’s request to extend the original variance for an additional 90 days. At the October 7 hearing, petitioner *793 noted that the county had fulfilled its obligations under the original variance by placing inmates to work within the community. He also stated there were no problems, i.e., escapes or injuries and that parents of the inmates were pleased in not being compelled to travel long distances if the inmates were required to be “farmed out”. Petitioner also stated that there was a savings of $62,000 which had been placed in a special capital account for the purpose of bringing the jail into compliance with the minimum standards.
In response to petitioner’s request, the chairman noted that double celling was against State policy. Originally the chairman was attracted to Saratoga’s proposal because it was a voluntary move. Staff observers were in agreement with the positive aspects of community service. The commissioner also stated the jail “would be carefully monitored and evaluated”; “however they noted problems and some deficiencies in the totality of operations”; the chairman “did not wish to go into detail and Petitioner would be formally notified.”
The 47-minute hearing concluded in a 2 to 1 vote denying the variance. Commissioner Joseph Wasser voted in the negative. The reason for its decision recites: “Given the totality of circumstances at the Saratoga County Jail, the facility is presently unable to comply with the minimum requirements established by the U.S. Supreme Court in Rhodes v Chapman 101 S. Ct 2392 (1981) and the Standards of this Court as expressed in Lareau v Manson 651 F 2nd 96 (2nd Cir 1981)”.
A review of the Supreme Court case in Rhodes v Chapman (452 US 337, 346), does not prohibit double bunking per se. Rather the test to be applied is the actual conditions existing in the context of the Eighth Amendment. Such conditions cannot be “cruel and unusual” and cannot “involve the unnecessary and wanton infliction of pain” (Gregg v Georgia, 428 US 153, 173), or if such conditions are “totally without penological inspection.” The double celling test as outlined in the Rhodes case (supra) should relate to whether its results cause the deprivation of essential food, medical care or sanitation and whether the double celling by the increased prison population leads to an *794 increase of violence among inmates or creates other conditions intolerable for prison confinement. In the instant case, respondent fails to demonstrate what effect, if any, the double celling of the eight cells had on the Saratoga County Jail.
As Justice Brennan recites in a concurring opinion (452 US, at pp 362-363), “thus, a Court considering an Eighth Amendment challenge to conditions of confinement must examine the totality of the circumstances.” “[C]ases are not decided in the abstract. A court is under the obligation to examine the actual effect of the challenged conditions upon the well-being of the prisoners” {supra, p 367).
In the instant case, the “totality of circumstances” as addressed by the respondent SCOC are direct to a standard rating of existing continued inefficiencies. Such standard ratings submitted, are not tailored or directed to the variance request of double bunking or its effect upon the Saratoga Jail. As Commissioner Webb stated at the October hearing, “the deficiencies exist whether you have double celling or not.” The exhibits produced by respondents fail to demonstrate that “the jail would be carefully monitored and evaluated” in respect to the basic issue of double bunking.
The testing procedures in denying petitioner’s request for an extension of time do not relate directly or indirectly to the impact of double bunking or its effect as to the general welfare, safety or sanitary conditions at Saratoga County Jail.
Although the court cannot substitute its opinion for SCOC, if such findings have no rational basis or SCOC has acted without foundation in fact or without sound basis in reason and is generally taken without regards to facts, the courts can take appropriate action. (See Matter of Pell v Board of Educ., 34 NY2d 222, 231; 1 NY Jur, Administrative Law, §§ 177, 185.)
The court appreciates the difficult responsibility of SCOC in assuring that the prison system is adequately maintained in accordance with the Eighth Amendment. A denial of the extension of the variance of the eight cell double bunking discourages without sound reasoning, the *795 innovativeness of petitioner’s request, not only to improve the general welfare of the inmates, but the possibility of a substantial savings to the community.
The variance request No. 82-V-19 is hereby granted.